IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 12-cv-00150-LTB-KMT

SANDRO TORRES, on behalf of himself and all similarly situated persons,

    Plaintiff,

v.

CACHE CACHE, LTD., a Colorado corporation;
JODI LARNER; and
CHRIS LANTER,

    Defendants.

_____

## ORDER
_____

This case is before me on Plaintiff's Motion for Approval of *Hoffman-La Roche* Notice [Doc # 12]. After consideration of the motion, all related pleadings, and the case file, I grant Plaintiff's motion.

### I. Background

Plaintiff, a server at Cache Cache, a high-end Aspen restaurant, has asserted a claim pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*., ("FLSA") to recover unpaid wages. Plaintiff's FLSA claim is based on allegations that Plaintiff and all other service staff at Cache Cache were required to participate in a tip pool that was shared with Cache Cache management and kitchen staff. Because the FLSA only authorizes tip pooling among employees who customarily and regularly receive tips, Plaintiff argues that Defendants were not entitled to the tip credit that they claimed against the minimum wage that would otherwise have to be paid to servers at Cache Cache. *See* 29 U.S.C. § 203(m).

By the Motion, Plaintiff asks the Court to conditionally certify this case as a collective action pursuant to 29 U.S. C. § 216(b) consisting of

> All current and former employees of any of the Defendants who worked at Cache Cache restaurant and whose hourly wage was reduced by some percentage of the applicable tip credit at any time from January 19, 2009 to present.

Plaintiff also asks that Defendants be ordered to provide him with a list of all potential collective action members and that certain procedures be set with respect to the requested notice to the potential collective action members.

## II.  Legal Standard

Section 216(b), 29 U.S.C., provides that an action to recover unpaid minimum wages under the FLSA may be maintained by an employee on behalf of himself and other employees similarly situated but that no employee may be a party plaintiff in any such action unless he gives his consent in writing and such consent is filed with the court in which the action is brought.  The Supreme Court has held that a district court has discretion to facilitate notice to potential plaintiffs under the ADEA which incorporates the procedures set forth in Section 216(b).  *Hoffman - La Roche, Inc. v. Sperling,* 493 U.S. 165, 169 (1989).

The Tenth Circuit has recognized a two-step analysis for determining whether employees are "similarly situated" for purposes of Section 216(b).  *Thiessen v. General Elec. Capital Corp.,* 267 F.3d 1095, 1105 (10th Cir. 2001).  First, at the initial "notice stage," a court must determine whether there are "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  *Id.* at 1102 (citations omitted).  The standard for certification at this stage "is a lenient one that typically results in class certification."  *Brown v. Money Tree Mortg. Co.,* 222 F.R.D. 676, 679 (D. Kan. 2004) (citations omitted).

Second, at the conclusion of discovery, a stricter standard of "similarly situated" is applied. *Theissen*, 267 F.3d at 1102-3. The factors reviewed at this stage of the analysis include "(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* at 1103 (quotation omitted).

### III.  Analysis

**A.  Applicable Standard for Certification**

The first issue to be decided is whether I apply the first or second stage standard for assessing whether the potential collective action members are "similarly situated." Because the discovery deadline in this case was November 1, 2012, Defendants argue that the stricter second stage standard is applicable. Plaintiff counters that since this case has never gone through the initial notice stage, it would be premature to proceed to the second stage analysis.

I acknowledge that the posture of this case is somewhat different than that typically associated with the second stage analysis of Section 216(b)'s "similarly situated" requirement. *See Thiessen*, 267 F.3d at 1102-3 (second stage analysis is often prompted by a motion to decertify a collective action that was approved under the first stage analysis). Nonetheless, the fact that discovery has been completed warrants a more rigorous analysis than that typically utilized at the initial notice stage. Although there are cases applying the first stage analysis in cases where substantial discovery has already occurred, *see e.g. Smith v. Pizza Hut, Inc.,* 2012 WL 1414325 at * 4 (D. Colo. April 12, 2012), I am not aware of any case that has done so where discovery has been completed. Furthermore, once discovery has been completed, the rationale for applying a lenient standard, *ie.* that the plaintiff has not been able to marshal the best

evidence to support a motion for certification, disappears. *See Pizza Hut, supra* (since discovery had not yet concluded, plaintiffs did not have full opportunity to discover evidence to satisfy more demanding second stage analysis).

I therefore analyze Plaintiff's motion under the more rigorous second stage analysis of Section 216(b)'s "similarly situated" requirement.

**B. The "Similarly Situated" requirement of Section 216(b)**

Turning to the evidence before me, Plaintiff argues that Alex Harvier, a manager and head sommelier, improperly participated in a tip pool with other Cache Cache employees including servers, food runners, back waiters, and door hosts. Defendants do not dispute Mr. Harvier's status as a manager but argue that his participation in the tip pool was proper because, as head sommelier, he provided a customer service that contributed to the amount of tips earned. Defendant, however, cite no case law to support their argument that a manager can participate in a tip pool based on customer service responsibilities. Conversely, there is case law supporting a contrary conclusion. *See e.g. Shahriar v. Smith & Wollensky Rest. Group, Inc.,* 659 F.3d 234, 240 (2d Cir. 2011) (employer loses its entitlement to the tip credit where it requires tipped employees to share tips with (1) employees who do not provide direct customer service *or* (2) managers); *Chung v. New Silver Rest., Inc.,* 246 F. Supp.2d 220, 229 (S.D.N.Y. 2002) ("... forced sharing of tips with management is ... illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping.").

In any event, there is nothing to suggest that other employees of Cache Cache who received tips did not contribute to the tip pool that was shared with Mr. Harvier or that

Defendants' argument that tip sharing with Mr. Harvier was proper would not apply to all of these employees. The relevant factors under a Section 216(b) second stage analysis therefore support a finding that the proposed collective action members were "similarly situated" with respect to Mr. Harvier's participation in the tip pool. *See Theissen, supra.*

Next, Plaintiff argues that kitchen staff at Cache Cache also improperly participated in the tip pool. Defendants concede that tips were shared with the kitchen staff but argue that this tip sharing was strictly voluntary. In support of this argument, Defendants provide an affidavit from a single back waiter at Cache Cache. Plaintiff counters that tip sharing with Cache Cache's kitchen was not voluntary and provides evidence that at the end of each night the head waiter collected all tips received and distributed them amongst the staff including kitchen staff according to a point or percentage system. Part of the evidence Plaintiff relies on is Defendant Jodi Larner's deposition testimony.

It is difficult to reconcile Ms. Larner's own explanation of how the tip pool is generated and distributed with the affidavit Defendants have provided in opposition to Plaintiff's motion. In any event, the weight of the evidence suggests that all tipped employees of Cache Cache contributed to the tip pool in the described manner and that the distribution received from the pool by the kitchen staff was therefore not truly voluntary. Furthermore, there is nothing to suggest that Defendants' argument that tip sharing with the kitchen staff was strictly voluntary would not apply to all Cache Cache employees who receive tips. Again then, the relevant factors under a Section 216(b) second stage analysis support a finding that the proposed collective action members were "similarly situated" with respect to the participation of Cache Cache's kitchen staff in the tip pool. *See Theissen, supra.*

Finally, in an apparent attempt to distinguish Plaintiff from other proposed collective action members, Defendants note his status as an illegal immigrant and involvement in other similar FLSA lawsuits. Neither of these issues, however, is likely to provide Defendants with a valid defense that is unique to Plaintiff. First, there are a number of cases finding that evidence of immigration status has no relevance in an FLSA action. *See e.g. Reyes v. Snowcap Creamery, Inc.,* 2012 WL 4888476 at *2 (D. Colo. Oct. 15, 2012) (recognizing that "weight of authority clearly holds that a plaintiff's immigration status is irrelevant in an FLSA action" and citing supporting authority). It is also questionable whether Defendants will be able to introduce evidence of other lawsuits involving Plaintiff. *See Van Deelen v. Johnson,* 2008 WL 4683022 at *2 (D. Kan. Oct. 22, 2008) (evidence of plaintiff's prior lawsuits cannot be admitted for purpose of proving that plaintiff is litigious but may be admissible for other purposes).

Based on the evidence presently before me then, I conclude that there are no unique facts or defenses to preclude a finding that Plaintiff is "similarly situated" to other potential collective action members with respect to the unlawful wage practices alleged.

**C. Other Issues**

    **1. Identification of Other Proposed Collective Action Members**

Defendants argue that Plaintiff's failure to submit affidavits from other Cache Cache employees demonstrating interest in joining this case or that they are similarly situated to Plaintiff is fatal to Plaintiff's request for certification. I disagree.

In support of their argument that Plaintiff must identify other Cache Cache employees who wish to opt-in to this proposed collective action, Defendants cites dicta from *Dybach v. Florida Dept. of Corrs.,* 942 F.2d 1562, 1567 (11th Cir. 1991), that in ruling on a request for

Section 216(b) collective action certification a court "should satisfy itself that there are other employees ... who desire to "opt-in." I have previously ruled that this dicta does not equate to a requirement that other proposed collective action members be identified, *Reab v. Elec. Arts, Inc.,* 214 F.R.D. 623, 629 (D. Colo. 2002), and Defendants cite no other authority to support such a requirement.

Plaintiff has presented ample evidence including deposition testimony from Defendants Larner and Lanter demonstrating that the procedures for collecting and distributing tips were universally applied to all Cache Cache service staff. This evidence is sufficient to establish that there are other similarly situated Cache Cache employees who may wish to opt in to the proposed collective action, and nothing more is required to support Plaintiff's motion for conditional certification.

**2.  Defining the Members of the Proposed Collective Action**

Relying on 29 U.S.C. § 255, Defendants argue that the members of the proposed collective action must be limited to servers who worked at Cache Cache in the two years prior to the filing of Plaintiff's Complaint on January 19, 2012 rather than the three year period requested by Plaintiff. I disagree.

Section 255(a) establishes a two-year limitations period for FLSA actions "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." To fall under the three-year limitations period of Section 255(a), a plaintiff must show that "the employer either knew or showed reckless disregard for the matter of whether its conduct violated the statute." *Mumby v. Pure Energy Servs. (USA), Inc.,* 636 F.3d 1266, 1270 (10th Cir. 2011) (*quoting McGlaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133

(1988)). "Reckless disregard can be shown through 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Id.* (*quoting Safeco Ins. Co. of Amer. v. Burr,* 551 U.S. 47, 68 (2007)). "The ... operative inquiry focuses on the employer's diligence in the face of a statutory obligation, not on the employer's mere knowledge of relevant law." *Id.*

In support of applying a three-year limitations period in this case, Plaintiff cites the deposition testimony of Defendant Chris Lanter as Cache Cache's Rule 30 (b)(6) designee wherein Mr. Larner acknowledges that no attempt was ever made to determine if Cache Cache's procedures governing tips were in compliance with the law. This evidence is sufficient to demonstrate "reckless disregard"by Defendants to support a three-year limitations period in defining the members of the proposed collective action. This is not to say, however, that Defendants are precluded from raising this issue again once specific class members are identified or otherwise. Among other things, I note that Plaintiff first cited Mr. Lanter's deposition testimony in its reply to the motion, and Defendants therefore have not had an opportunity to refute this evidence. Nonetheless, for present purposes, I conclude that the three-year limitations period relied on by Plaintiff in defining the potential members of the proposed collective action is appropriate.

### 3. Form of Notice

Defendants' objection based on Plaintiff's failure to provide a from of notice does not warrant denying the relief requested. As proposed by Plaintiff, the parties shall confer on an appropriate form of notice and submit the proposed notice to the Court for approval.

### IV.  Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1.  Plaintiff's Motion for Approval of *Hoffman-La Roche* Notice  [Doc # 12] is GRANTED;

2.  This case is conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b) consisting of

> All current and former employees of any of the Defendants who worked at Cache Cache restaurant and whose hourly wage was reduced by some percentage of the applicable tip credit at any time from January 19, 2009 to present;

3.  The parties shall confer and submit a proposed form of notice of this collective action within 14 days from the date of this Order;

4.  Defendants' counsel shall provide Plaintiff's counsel with a list of all potential collective action members within 14 days of the date of this Order.  The list shall include each such employee's name, position, dates or employment, last known address, telephone number, and hourly wage (excluding tips);

5.  Within 5 days of the Court's approval of the proposed notice, Plaintiff shall send the notice by First Class U.S. Mail to the last known address of each of the individuals on the above-referenced list.  The return address for these mailings shall be that of Plaintiff's counsel;

6.  Any individual to whom notice is sent may "opt-in" to this collective action through the filing of a written consent with this Court within 45 days from the postmark date of the notice; and

7.  Defendants, including any of their agents, owners, employees, attorneys, representatives, affiliates, agents, and/or any other person acting or purporting to act on their

behalf, shall take no action that could in any way influence any of the noticed individuals in making their decision as to whether to "opt-in" to this collective action and shall not retaliate in any way against any individual who elects to "opt-in" to this collective action.

Dated: December  21 , 2012 in Denver, Colorado.

                              BY THE COURT:

                                s/Lewis T. Babcock
                              LEWIS T. BABCOCK, JUDGE